**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**DEAN McNEEL, D.D.S., P.A.**
**Substituted For**
**DEAN McNEEL d/b/a**
**OZARK PROSTHODONTICS** **PLAINTIFF**

**vs.** **CASE NO. 5:10-cv-05043-JLH**

**KaVo DENTAL TECHNOLOGIES, LLC** **DEFENDANT**

**BRIEF IN SUPPORT OF RESPONSE TO MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES**

Comes the substituted Plaintiff, Dean McNeel, D.D.S., P.A. (herein referred to as "Dr. McNeel"), and for its Brief in Support of Response to the Motion for Summary Judgment Regarding Damages respectfully states that the Motion for Summary Judgment Regarding Damages should be denied for the reasons set forth below.

I. BACKGROUND

Initially, Defendant, KaVo Dental Technologies, LLC (herein referred to as "KaVo"), contends that Dr. McNeel has filed suit for common law breach of contract.

Respectfully, Dr. McNeel, as the Complaint reflects, filed suit for breach of contract based on specific express warranties.

Dr. McNeel has *never* disputed the applicability of the Uniform Commercial Code in Arkansas with respect to his cause of action and/or the remedies available to him.

KaVo contends that it is entitled to summary judgment based on certain specified damages alleged by Dr. McNeel. As evidenced by the Affidavit of Dr. McNeel, after commencement of the

litigation, Dr. McNeel was asked by his counsel to prepare a *preliminary* summary of damages that he believed that he has suffered as a result of the breach of the express warranties by KaVo. This request was prompted by counsel for KaVo's request that Dr. McNeel participate in an informal discussion with counsel for KaVo to present to KaVo the damages that he believes he has suffered. This discussion did occur by telephone and counsel for KaVo was allowed to ask Dr. McNeel and his wife and Office Manager, Lori McNeel, specific questions regarding his initial claim for damages, prior to the commencement of formal discovery. *See Affidavit of Dr. McNeel*, attached as Exhibit "A" to the Response to Motion for Summary Judgment Regarding Damages (hereinafter referred to as the "Affidavit of Dr. McNeel").

In connection with the foregoing, Dr. McNeel provided a document attached to the Response to the Motion for Summary Judgment Regarding Damages. Dr. McNeel has *never* contended that this Exhibit was his final determination and/or calculation of damages that he has suffered and/or will suffer.

As evidenced by the Affidavits of Dr. McNeel and Dan Vinson, copies of which are attached to the Response to Motion for Summary Judgment Regarding Damages, Dr. McNeel has fully cooperated with Defendant in connection with all discovery, including damages.

In early October 2010, KaVo was informed by counsel for Dr. McNeel that he had retained Cheryl Shuffield, a forensic accountant with Frazer Frost, L.L.P., as a *consulting* expert, to assist Dr. McNeel with the calculation of his final damages in this case.

Dr. McNeel and Lori McNeel were deposed on August 20, 2010. Through no fault of their own, their depositions were not completed and were rescheduled to commence on October 29, 2010, approximately three weeks prior to the discovery deadline. It was agreed that at this deposition, Dr.

McNeel would testify regarding his final calculation of damages and thereafter KaVo's damage expert would be deposed.

Unfortunately, the depositions were postponed because Lori McNeel's brother was diagnosed with terminal cancer and the Doctors at U.A.M.S. told Lori McNeel and her family on Tuesday, October 26, 2010 that her brother's life expectancy is ninety (90) days. In addition, Lori McNeel's father underwent colon surgery on Monday, October 25, 2010, and therefore Lori McNeel was required to attend to family matters. On Wednesday, October 27, 2010, the undersigned counsel communicated information regarding Lori McNeel's family situation to counsel for Defendant. Counsel for Defendant graciously suggested that the deposition could be postponed and, after consultation with Dr. McNeel and Lori McNeel, the undersigned counsel requested a postponement.

## II.ARGUMENT

Importantly, KaVo's argument with respect to damages ignores important provisions of the Uniform Commercial Code. Specifically, Ark. Code Ann. § 4-2-714 provides in pertinent part as follows:

> *(1) Where the buyer has accepted goods and given notification (§4-2-607(3)) he may recover his damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.*
> (2) The measure of damages for breach of warranty is the difference of the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
> (3) In a proper case, any incidental and *consequential damages* under the next section may also be recovered.
>
> (emphasis supplied)

Respectfully, as this Court is aware, lost profits may be recovered as consequential damages for breach of warranty. *Ark. Code. Ann. §4-2-714; Ark. Code Ann. §4-2-715.* Also, as this Court is aware, the "Tacit Agreement" test for the recovery of consequential damages has been rejected in connection with claims under the Uniform Commercial Code. *Id.* With respect to breach of warranty, lost profits are held to be foreseeable if they are proximately caused by and are the natural result of the breach. *Id*; *See 5(A), Corbin Contracts §10-12 (1964).*

Dr. McNeel, for purposes of the pending Motion, will respond only to the items of damages disputed by KaVo.

A. DAMAGES RELATED TO ORIGINAL PURCHASE OF THE KAVO EVEREST EQUIPMENT

Dr. McNeel, in his preliminary request for damages, requested the total sum of One Hundred Ninety Five Thousand Two Hundred Forty One Dollars and Ninety Five Cents ($195,241.95), related to amounts paid or owed to AmeriCorp for the purchase of the KaVo equipment.

KaVo, through its expert, contends that there is no basis for these alleged damages. To the contrary, as set forth in the Affidavit of Dr. McNeel, Dr. McNeel purchased the KaVo equipment based on the express warranties referred to in the Complaint, including the warranty that the equipment would be free from manufacturing defects and that if any defects should arise as the result of the manufacturing process, that KaVo would remedy the defect to the *unconditional satisfaction* of Dr. McNeel at the earliest possible, mutually agreeable, date.

Based on the Affidavit of Dr. McNeel, Dr McNeel notified KaVo prior to the one year period of manufacturing defects and was constantly assured that the defects would be remedied. Based on the aforementioned Affidavit of Dr. McNeel, the defects have never been remedied.

In addition, at the time of the purchase, KaVo represented and promised to provide support for its product, however, KaVo likewise failed to perform with respect to this promise and representation which constituted an express warranty.

As a result thereof, Dr. McNeel believes that he is entitled to damages in the amount of One Hundred Ninety Five Thousand Two Hundred Forty One Dollars and Forty One Dollars and Ninety Five Cents ($195,241.95) for the amounts paid or owed for the purchase of the KaVo equipment.

The expert for Defendant contends that there is no basis for these alleged damages because Dr. McNeel currently uses the KaVo equipment on a routine basis in the operation of his dental practice to generate revenues for the practice and therefore contends that there are no damages for amounts paid to AmeriCorp for equipment that continues to be used in the practice for the production of income.

To the contrary, Dr. McNeel, in his Affidavit, states that the KaVo equipment is essentially worthless to him because it does not operate properly and, as a result thereof, he has *lost* substantial sums of money in attempting to utilize the KaVo equipment. Dr. McNeel, in his Affidavit, respectfully asserts that he informed KaVo of the worthlessness of the KaVo equipment to him on numerous occasions and that the *only* reason that he continued to attempt to utilize the KaVo equipment was based on the representations of KaVo that it would remedy the defects.

Furthermore, based on the Affidavit of Dr. McNeel, it is clear that the KaVo equipment has never been utilized for the precision operation required in his practice and rather, is being utilized essentially as a "copy machine."

In connection with the sale, Dr. McNeel was told, and relied upon, KaVo's representation and warranty in KaVo's website as follows:

> **Where Artistry meets Precision**
> When satisfaction is measured in microns, precision is the rule. The KaVo EVEREST CAD/CAM System creates predictable and aesthetic dental restorations in a variety of innovative materials. With this ultimate lab-based technology you can expect superb Precision, astounding Artistry and a perfect fit for the first time ... every time. Precisely what you expect from KaVo.
> **Total perfection**
> The KaVo Everest System CAD/CAM is an outstanding example of **holistic design in dental laboratory technology**. The four Everest components together make up a complete system providing an optimum solution for the demands of contemporary processing technology. It combines advanced technology with maximum **economy and quality**.

Based on the foregoing, Dr. McNeel respectfully asserts that his claim for One Hundred Ninety Five Thousand Two Hundred Forty One Dollars and Ninety Five Cents ($195,241.95) relating to the purchase of the KaVo Everest equipment as a component of damages is "reasonable under the circumstances," and that at most, KaVo would be entitled to a reduction of the sum expended for the purchase of the KaVo equipment in the amount of Twenty Six Thousand ($26,000.00), which represents the amount that Dr. McNeel received for his previous equipment at the time that he purchased the KaVo equipment.

As an *alternative* measure of damages to Ark. Code Ann. § 4-2-714(1), which is to measure damages "in any manner which is reasonable," Dr. McNeel is seeking damages pursuant to Ark. Code Ann. § 4-2-714(2) for the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. Based on the Affidavit of Dr. McNeel, Dr. McNeel respectfully asserts that the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted is zero.

As stated above, Dr. McNeel respectfully asserts that at the time and place of acceptance, the KaVo equipment was non-conforming, particularly because the software system, which creates the opportunity for precision, which was the basis for the purchase of the equipment, was malfunctioning and defective.

As evidenced by the email from KaVo to Dr. McNeel on July 10, 2009, a copy of which is attached to Dr. McNeel's Affidavit, KaVo admitted that there was a software glitch that impacted the viability of the KaVo equipment and caused misalignments and that this "discovery/admission is quite an embarrassment." Specifically, the email from KaVo stated as follows:

> Hello Dr. McNeel,
>
> I will have to agree with you that your fix is most likely a partial one. Markus has reported to me today that he finally obtained the proof he was looking for to show Geomagic that the [sic] is a bug in the software causing contributing [sic] to problems. He has reported it to Geomagic and work will begin on a SW fix. Markus suspects that this bug has been in the Geomagic SW for a long time. He sent me an image that the software produced and it looks very much like your misalignments. He does not know the time line of the fix but believes it will be soon. In the mean time [sic] I burned a SW patch that Markus send [sic] to me and you should receive the disc Tuesday. I still want to double check with Markus before recommending and install. I'll keep you up to date. This discovery/admission is quite an embarrassment if it proves true.
> At this point this is all I know.
>
> Have a great weekend.
>
> Ron

In addition, based on the Affidavit of Dr. McNeel, it was clearly Dr. McNeel's understanding at the time that he purchased the KaVo equipment, that he would be allowed to *utilize* product from *all* available sources in connection with the KaVo equipment to manufacture the prosthesis and other

dental applications and devices for his patients. Subsequent to the sale, KaVo breached its promise to Dr. McNeel by placing R.F.I.D. tags on the products, thus requiring KaVo purchasers, like Dr. McNeel, to only be allowed to utilize product from KaVo in the manufacturing process.

As Dr. McNeel has alleged in his Affidavit, the products supplied by KaVo, that he was being forced to utilize were inferior and defective, thus continuing to render the equipment supplied by KaVo worthless on an objective and subjective basis. Importantly, the warranty required "unconditional satisfaction."

Thus, based on the foregoing, Dr. McNeel reasonably believes that there is a genuine issue of material fact based on his damages claim for the original purchase price of the KaVo Everest equipment based on Ark. Code Ann. § 4-2-714(1) and Ark. Code Ann § 4-2-714(2).

B. COSTS RELATED TO REPLACEMENT EQUIPMENT

As an alternative to the claim for the original purchase price of the KaVo Everest equipment, Dr. McNeel seeks the sum of One Hundred Ninety Eight Thousand Six Hundred Thirty Four and 92/100 Dollars ($198,634.92) for the cost of purchasing a new system. In its Motion for Summary Judgment, KaVo contends in summary fashion that it is the opinion of its expert witness that no basis exists that is consistent with accepted damage methodologies to assert such damages. *See Expert Report of Arnie & Co. Dated September 14, 2010*, a copy of which is attached as Exhibit "4" to the Motion for Summary Judgment on Liability and Damages.

Respectfully, but unfortunately, Defendant's expert has *failed* to consider case-law and a notable UCC treatise, *J. White & R. Summers, Uniform Commercial Code, Chapter 10 (1972)*, wherein the authors note that a common objective measure of the difference in value as is and as warranted pursuant to the UCC provision referred to above is the cost of replacement.

Based on the foregoing, Dr. McNeel believes that there is a genuine issue of material fact relating to his alternative damage claim regarding the cost of replacement for the equipment.

C. DAMAGES RELATED TO THE TIME TO RE-DO AND DELIVER PRODUCT

Defendant's expert, Arnie & Co., criticizes the aforementioned claim of Dr. McNeel for the following reasons

1. The computation does not comport with any accepted methodology found in any accepted accounting or business treatise;
2. The computation is not supported by the historical business records of the practice; and
3. The computation is speculative, without foundation, and without any basis in fact.

Obviously, in its analysis, Arnie & Co. has ignored Ark. Code Ann. § 4-2-714, which, as stated above, allows the buyer of accepted goods to recover damages for any non-conformity of tender the loss resulting in the ordinary course of events from the sellers breach as determined in any manner which is reasonable.

Thus, the costs for time spent re-milling and reworking various product, including alleged additional patient time, is obviously and proximately caused by the non-conformity of the accepted goods.

With respect to the time spent for re-making product, Dr. McNeel, in his Affidavit and the attachments thereto, demonstrates a loss of revenue of Three Hundred Twelve Thousand Three Hundred Forty Dollars ($312,340.00). In addition, Dr. McNeel, in his Affidavit and attachments thereto, has supplied documentation reflecting the sum of One Hundred Eighty Nine Thousand Four Hundred Forty One and 35/100 Dollars ($189,441.35) for invoices relating to outsourcing to other labs to get work done that should have been performed in-house. This cost, as evidenced by the

Affidavit of Dr. McNeel, is a complete "out of pocket" cost for which there is no set-off.

D. OTHER DAMAGE CLAIMS

Plaintiff will testify when the depositions are resumed, that it is no longer pursuing the claim for loss of revenue for the lab in the amount of One Hundred Thirteen Four Hundred and Five and 30/100 Dollars ($113,405.30); the cost of supplies and parts in the amount of Fifty Four Thousand Nine Hundred Sixty Six and 72/100 Dollars ($54,964.72); and attorney fees in the amount of Twenty Thousand Dollars ($20,000.00) or any other attorney fees, because this will be determined by the Court, if appropriate.

The additional hourly time in the amount of Fourteen Thousand Eight Hundred Forty One Dollars ($14,841.00) will be reduced to an hourly rate of Eighty Seven Dollars ($87.00) per hour based upon an annual salary for Dr. McNeel of ($168,00.00).

The damages of One Hundred Seventy Four Thousand Six Hundred Dollars ($174,600.00) for email communications will likewise be reduced, based upon the rate of Eight Seven Dollars ($87.00) per hour.

WHEREFORE, the substituted Plaintiff, Dean McNeel, D.D.S., P.A., respectfully prays that the Motion for Summary Judgment Regarding Damages be denied, for his costs, attorney's fees, and for all other proper relief.

Respectfully submitted,

SHEMIN LAW FIRM, PLLC
3333 Pinnacle Hills Pkwy, Ste 603
Rogers, Arkansas 72758
Telephone: (479) 845-3305
Facsimile: (479) 845-2198
Email: ken@sheminlaw.com

By: /s/ Kenneth R. Shemin
Kenneth R. Shemin, AR Bar. No. 78138

**CERTIFICATE OF SERVICE**

I, Kenneth R. Shemin, do hereby certify that I have sent via:

____ U.S. Mail, postage prepaid
____ Hand-delivery
____ Facsimile
____ Electronic Mail
XXX Federal Court ECF System to the Clerk of the Court for filing and transmittal of Notice of Electronic Filing to ECF registrants

This 29th day of October, 2010, a true and complete copy of the foregoing attached document to the following individual(s):

Jeffrey W Puryear jpuryear@wlpmlaw.com, kquach@wlpmlaw.com

John V. Phelps jphelps@wlpmlaw.com, kquach@wlpmlaw.com

/s/ Kenneth R. Shemin
Kenneth R. Shemin