**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**DEAN McNEEL, D.D.S., P.A.**
**Substituted For**
**DEAN McNEEL d/b/a**
**OZARK PROSTHODONTICS** **PLAINTIFF**

**vs.** **CASE NO. 5:10-cv-05043-JLH**

**KaVo DENTAL TECHNOLOGIES, LLC** **DEFENDANT**

**MOTION TO COMPEL; MOTION TO AMEND SCHEDULING ORDER, OR IN THE ALTERNATIVE, MOTION FOR CONTINUANCE**

Comes the substituted Plaintiff, Dean McNeel, D.D.S., P.A. (herein referred to as "Plaintiff") and for its Motion to Compel; Motion to Amend Scheduling Order, or in the Alternative, Motion for Continuance states:

I. BACKGROUND

1. On or about, August 2, 2010, Plaintiff propounded its First Set of Interrogatories and Requests for Production of Documents to Defendant, KaVo Dental Technologies, LLC. A copy of the aforementioned discovery is attached hereto as Exhibit "A," and incorporated herein.

2. On September 2, 2010, KaVo Dental Technologies, LLC forwarded its answers to Plaintiffs Interrogatories and Requests for Production of Documents. A copy of the discovery responses is attached hereto as Exhibit "B" and incorporated herein.

3. On September 21, 2010, in a good faith attempt to resolve a discovery dispute, the undersigned counsel, on behalf of Plaintiff, forwarded the attached correspondence to counsel for

Defendant, setting forth the alleged deficiencies with the discovery responses. A copy of the correspondence is attached hereto as Exhibit "C" and incorporated herein.

4. Importantly, in the aforementioned correspondence dated September 21, 2010, the undersigned counsel requested that Defendant forward *all* documents responsive to the Requests for Production of Documents that were not attorney-client privileged. Thus, this request was made two months prior to the November 21, 2010 discovery deadline.

5. To date, Defendant has not produced any documents to the Plaintiff pursuant to the discovery requests with the exception of a one page document on October 28, 2010, a copy of which is attached hereto as Exhibit "D" and incorporated herein, and an executed copy of the Purchase Agreement.. Thus, in total, Defendant has provided two documents to Plaintiff during the entire discovery process.

6. It is imperative for the Court to note that nothing contained herein is intended to be a reflection on opposing counsel, but rather their client.

7. In contrast to the Defendant, Plaintiff has been *extremely* cooperative with Defendant in providing *all* documents in its possession, whether requested formally or informally. In addition, without the necessity of formal discovery, Plaintiff has allowed Defendant to inspect its office and the subject equipment.

8. Furthermore, in order to facilitate discovery in this case, Plaintiff has allowed Defendant direct access to its key employees, including Dr. McNeel, Lori McNeel, the Office Manager of Plaintiff, and Dan Vincent, the Director of Finance and the person in charge of the accounting functions for Plaintiff. Plaintiff has not only produced documents beyond the written discovery propounded, but has also *created* documents containing information not kept in the

ordinary course of business to facilitate discovery for the benefit of Defendant. See Affidavit of Dan Vinson, a copy of which is attached hereto and incorporated herein as Exhibit "E."

9. On September 24, 2010, counsel for KaVo forwarded an e-mail, a copy of which is attached hereto as Exhibit "F" and incorporated herein, addressing the alleged deficiencies in Defendant's discovery responses.

10. These responses, however, do not adequately address the concerns of the Plaintiff with respect to its outstanding discovery for the reasons set forth below.

II. REQUESTS FOR PRODUCTION OF DOCUMENTS

11. Request for Production No. 2 propounded by Plaintiff requested all documents, including correspondence and emails by and between the Plaintiff and Defendant and its successors and/or assigns that relate in any manner to the subject-matter of this litigation. In Defendant's response, Defendant stated that it would produce all documents, correspondence, and emails in its possession between itself and the Plaintiff. As stated above, other than the production of the executed Purchase Agreement, the only document produced was the single page document on October 28, 2010. Unfortunately, this production is a totally inadequate response. In addition, Plaintiff was informed on October 28, 2010 that Defendant is *now* taking the position that it will not produce *any* documents that are in the possession of Defendant's business and purported business affiliates in Germany. Importantly, Plaintiff initially filed its lawsuit against KaVo Dental Corporation. KaVo Dental Corporation did not answer the Complaint and a Motion for Default Judgment was filed. In responding to the Motion for Default Judgment, KaVo Dental Corporation alleged that it had been merged into KaVo Dental Technologies, LLC on June 24, 2009 and attached the Articles of Merger. A copy of the Response to the Motion for Default and the Articles of Merger are attached hereto as

Exhibit "G" and incorporated herein. As a result thereof and based on the representation that Defendant was the proper party, Plaintiff dismissed its lawsuit against KaVo Dental Corporation.

12. It is now disingenuous and improper for the Defendant to take the position that it cannot produce the aforementioned discovery from an entity that was merged into it or a related KaVo entity. Defendant has successor liability based upon the Articles of Merger. As set forth in the Affidavit of Dr. McNeel, a copy of which is attached hereto and incorporated herein as Exhibit "H," Defendant directed Plaintiff to Germany for technical support and warranty issues.

13. Defendant's website, upon which Plaintiff relied in purchasing the equipment stated as follows:

> **We never leave you without assistance: KaVo Everest remote service**
> Wherever in the world you work with the KaVo Everest and whatever problems you may have, our hotline team will assist you directly and quickly.
>
> KaVo Germany is connected over the telephone line to all installed Everest systems anywhere in the world. Our engineers can log in to any Everest system anywhere in the world over this network as required.
>
> **This saves you time any money, because problems can be resolved as quickly as possible.**

See Affidavit of Dr. McNeel, a copy of which is attached hereto as Exhibit "H" and incorporated herein.

14. Request for Production No. 3 propounded by Plaintiff requests all documents in the possession of Defendant and/or its successors and assigns that refer in any manner to the Plaintiff. These documents have not been produced. These documents are essential to Plaintiff's prosecution of its case because Plaintiff reasonably believes that the *internal communications* of Defendant and the entity merged into it, will reflect that Defendant had knowledge of substantial defects with the

equipment that was sold to Plaintiff prior to the time of the sale. As stated above, Plaintiff learned on October 28, 2010 that Defendant is refusing to produce any internal documents from Germany. As the record reflects, Dr. McNeel and his staff spent substantial time dealing with Germany in regard to the alleged defects and other issues pertaining to this litigation.

15. Request for Production No. 5 propounded by Plaintiff requests production of all documents that refer and/or relate in any manner to the defects and/or other problems, including warranty claims for specific equipment identified by Plaintiff for all customers of Defendant and/or its successors and assigns. The purpose of this request was to establish that Plaintiff was not the only customer that was having problems with the equipment and product sold to it. Plaintiff believes that Defendant will assert at trial that Plaintiff did not properly use the equipment and product and thus contend that there was no breach of warranty. The aforementioned discovery is reasonably calculated to refute this contention. In Defendant's response to this request, it states that there are no "defects" with respect to the equipment at issue. This is simply not true. For example, on July 10, 2010, approximately 3 years after the purchase, Defendant forwarded the following email to Dr. McNeel, wherein it acknowledged that the software that was the "heart and soul" of the equipment purchased by Plaintiff was defective and had been "for a long time." Specifically, Defendant, in this email, a copy of which is attached hereto as Exhibit "I" and incorporated herein, admitted the following:

> Hello Dr. McNeel,
>
> I will have to agree with you that your fix is most likely a partial one. Markus has reported to me today that he finally obtained the proof he was looking for to show Geomagic that the [sic] is a bug in the software causing contributing [sic] to problems. He has reported it to Geomagic and work will begin on a SW fix. Markus suspects that this bug has been in the Geomagic SW for a long time. He sent me an image that the software produced and it looks very much like your misalignments. He does not know the time line of the fix but believes it will be soon. In the mean time [sic] I burned a SW patch that

> Markus send [sic] to me and you should receive the disc Tuesday. I still want to double check with Markus before recommending and install. I'll keep you up to date. This discovery/admission is quite an embarrassment if it proves true.
> At this point this is all I know.
>
> Have a great weekend.
>
> Ron

16. It should be noted that "Markus" is an individual that resides in Germany, that Plaintiff dealt with on numerous occasions regarding warranties and other issues.

III. INTERROGATORIES

17. Interrogatory No. 3 propounded by the Plaintiff and the thereto response were as follows:

> **INTERROGATORY NO. 3:** You stated in Paragraph 5 of the Answer to Complaint, "...any product sold or distributed by it met and complied with the terms of any agreement and/or understanding whether written or oral, if any." With respect to this statement, please state as follows:
>
> (a) State all facts that support the statement referred to above.
>
> (b) Identify any persons who have or may have any knowledge or information as to the facts that support such knowledge.
>
> (c) Identify all expert witnesses that will testify at trial regarding the facts that support the denial.
>
> (d) Identify each document or other tangible thing, including any contractual provision upon which you rely in whole or in part that tends to support the denial.
>
> **ANSWER:** This allegation in paragraph 5 simply means that the Everest was a good and functional product and in lay language, there was nothing wrong with it. The individuals who will testify to this are set forth in Response to Interrogatory No. 1.

18. This response is inadequate in light of the correspondence and communications attached hereto and incorporated herein as Exhibit "J," that evidence that KaVo acknowledged that there were problems with the KaVo System.

19. Interrogatory No. 4 propounded by the Plaintiff and the response were as follows:

> **INTERROGATORY NO. 4:** In paragraph 6 in the Answer to Complaint, you deny the existence of any manufacturing defects that are alleged in the Complaint and further deny that you have failed and refused to satisfactory service or respond to any complaint. You further state that at all times pertinent to the allegations in the Complaint that you have fully, completely and thoroughly met all obligations. With respect to this denial, please state the following:
>
> (a) State all facts that support the statement referred to above.
>
> (b) Identify any persons who have or may have any knowledge or information as to the facts that support such knowledge.
>
> (c) Identify each document or other tangible thing, including any contractual provision upon which you rely in whole or in part that tends to support the denial.
>
> (d) Identify each document or other tangible thing, including any contractual provision upon which you rely in whole or in part that tends to support the denial.
>
> **ANSWER:** The allegations in Paragraph 6 mean that Dr. McNeel's Everest was a good and functioning product and that it has been appropriately serviced and repaired when necessary. The individuals listed in Interrogatory No. 1 will collaborate this plea, although any KaVo representative familiar with Dr. McNeel's sale and use would also have information responsive to this defense.

20. This response is likewise inadequate for the reasons set forth in Plaintiff's "good faith" discovery dispute letter dated September 21, 2010 and because it fails to respond to the questions posed. *See Exhibit "C."*

21. Interrogatory No. 5 propounded by the Plaintiff and the response thereto were as

follows:

> **INTERROGATORY NO. 5:** With respect to Paragraph 11 in the Answer to Complaint, you state that at all times pertinent to the allegations in the Complaint, neither you, nor any of your agents, servants or employees breached any duty owed to the Plaintiff of any kind whatsoever. With respect to this statements, please state the following:
>
> (a) State all facts that support the statement referred to above.
>
> (b) Identify any persons who have or may have any knowledge or information as to the facts that support such knowledge.
>
> (c) Identify each document or other tangible thing, including any contractual provision upon which you rely in whole or in part that tends to support the denial.
>
> (d) Identify each document or other tangible thing, including any contractual provision upon which you rely in whole or in part that tends to support the denial.
>
> **ANSWER:** Paragraph 11 simply means that neither the defendant, nor any agents, servants or employees was guilty of any actionable misconduct.

22. This response is obviously inadequate for the reasons set forth in Plaintiff's "good faith" discovery dispute letter dated September 21, 2010 and because it fails to respond to the questions posed. *See Exhibit "C."*

IV. DEPOSITIONS

23. After the disclosure by Defendant of its two witnesses in the discovery responses on September 2, 2010, Plaintiff requested deposition dates for these two witnesses. Initially, these two witnesses were designated as expert witnesses, even though they were employed directly by Defendant. Thereafter, when no expert reports were provided, Defendant informed Plaintiff that these witnesses would testify but *not* as experts.

24. In any event, counsel for Plaintiff provided several dates in October and early November for the depositions. Defendant responded that these two witnesses were not available on those dates. Thereafter, counsel for Plaintiff proposed the following dates for these depositions:

- October 22, 2010
- October 27, 2010
- November 8, 2010
- November 9, 2010
- November 12, 2010
- November 16, 2010

25. Counsel for Plaintiff was thereafter informed that the two witnesses were not available for deposition until December 14, 2010, weeks after the discovery deadline set by this Court. Defendant proposed that the parties jointly request an extension of the discovery deadline from this Court *solely for the purpose of taking the two depositions.* At the time, counsel for Plaintiff seriously considered the stipulation, however, it has become manifestly clear that Defendant is *stonewalling* discovery for the reasons set forth above in order to pass through the November 21, 2010 discovery deadline and thus hamper Plaintiff's preparation for trial. This allegation is evidenced by the lack of cooperation by Defendant in providing discovery and the belated disclosure that documents from Germany that are in either the possession or control of the Defendant will not be produced.

## III. RELIEF SOUGHT

26. Plaintiff respectfully requests that the Court order the immediate production of documents referred to above and that the discovery deadline and other relevant deadlines set by this Court be extended in order to allow Plaintiff to fairly prosecute its case. For example, if Plaintiff

determines, based on the document production and depositions that Defendant had knowledge of the software and other defects prior to the time of the sale to Plaintiff, Plaintiff respectfully requests that it be permitted to amend its Complaint to allege fraud in the inducement.

27. Plaintiff has been diligent in pursuing its discovery and attempting to work in good faith with Defendant before burdening this Court with the discovery dispute. Plaintiff should not be prejudiced for acting in good faith. Alternatively, Plaintiff requests a continuance of this case.

WHEREFORE, substituted Plaintiff, Dean McNeel, D.D.S., P.A. respectfully prays that the Motion to Compel; Motion to Amend Scheduling Order, or in the Alternative, Motion for Continuance be granted, and for all other proper relief.

Respectfully submitted,

SHEMIN LAW FIRM, PLLC
3333 Pinnacle Hills Pkwy, Ste 603
Rogers, Arkansas 72758
Telephone: (479) 845-3305
Facsimile: (479) 845-2198
Email: ken@sheminlaw.com

By: /s/ Kenneth R. Shemin
Kenneth R. Shemin, AR Bar. No. 78138

## CERTIFICATE OF SERVICE

I, Kenneth R. Shemin, do hereby certify that I have sent via:

____ U.S. Mail, postage prepaid
____ Hand-delivery
____ Facsimile
____ Electronic Mail
XXX Federal Court ECF System to the Clerk of the Court for filing and transmittal of Notice of Electronic Filing to ECF registrants

This 29th day of October, 2010, a true and complete copy of the foregoing attached document to the following individual(s):

Jeffrey W Puryear jpuryear@wlpmlaw.com, kquach@wlpmlaw.com

John V. Phelps jphelps@wlpmlaw.com, kquach@wlpmlaw.com

/s/ Kenneth R. Shemin
Kenneth R. Shemin