**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**DR. DEAN McNEEL d/b/a**
**OZARK PROSTHODONTICS** **PLAINTIFF**

**v.** **No. 5:10-cv-05043-JLH**

**KaVo DENTAL TECHNOLOGIES, LLC** **DEFENDANT**

**RESPONSE TO MOTION TO COMPEL;**
**MOTION TO AMEND SCHEDULING ORDER,**
**OR IN THE ALTERNATIVE, MOTION FOR CONTINUANCE**

Comes now defendant, KaVo Dental Technologies, LLC (hereinafter "KaVo"), by and through its attorneys, Womack, Landis, Phelps & McNeill, P.A., and for its Response to Plaintiff's Motion to Compel; Motion to Amend Scheduling Order, or in the Alternative, Motion for Continuance, states:

## I. INTRODUCTORY COMMENT

All of the depositions that plaintiff wishes to take were scheduled by agreement before the Motion to Compel was filed.

There has never been a written discovery request directed to a non-party "German company."

This defendant has and will continue to respond to its discovery obligations in good faith as more particularly described below.

## II. BACKGROUND

1. The Motion to Compel of Dean McNeel, D.D.S., P.A. falsely accuses defendant of "disingenuous" and "stonewalling" behavior. These allegations of the McNeels were

provoked entirely by undersigned counsel's refusal on October 28, 2010 to agree to a continuance and/or voluntary non-suit without prejudice.

2. KaVo has met every deadline set in the scheduling order, has provoked no oral discovery delay, and respectfully objects to the harsh allegations made against it.

3. KaVo responds to plaintiff's motion by discussing each of the categories alleged against it, i.e. Depositions, Requests for Production of Documents and Interrogatories.

## II. DEPOSITIONS

4. The depositions of all trial witnesses have been scheduled, except Dr. and Mrs. McNeel's final deposition which have to be rescheduled because of Mrs. McNeel's personal family problem.

5. Dr. Dean and Mrs. Lori McNeel's depositions were scheduled for August 20, 2010.

6. Dr. McNeel's deposition started at 8:45 a.m. Dan Vinson, his office accountant, and his wife, Lori McNeel, were present and just before the start of the depositions attempted to respond to KaVo's outstanding Requests for Production of Documents. They brought many, many documents, some of which were on a jump drive.

7. With the necessary breaks and lunch, Dr. Dean McNeel's deposition was concluded at 3:35 p.m. and undersigned counsel stated:

> I am going to adjourn your deposition. If we need to ask you more questions after we get all of this documentation, I will, but for the moment I think I am finished. (Dr. Dean McNeel dep. at 219).

8. Lori McNeel's deposition started at 3:57 p.m.

9. It was adjourned at 4:35 p.m.

10. It was agreed that her deposition could be completed on September 30, 2010, along with plaintiff's finance director, Dan Vinson.

11. When undersigned counsel arrived at counsel's office on September 30, 2010, it was announced that Mrs. Lori McNeel would not be able to attend her deposition because of a death of a dental clinic employee's husband. However, Mr. Dan Vinson's deposition was taken and plaintiff produced additional damage documents.

12. By agreement of the parties, Dr. Dean and Lori McNeel's depositions were to be completed on October 29, 2010.

13. On October 27, 2010, plaintiff's counsel notified KaVo that due to the personal and family circumstances faced by Mrs. Lori McNeel, she would be unable to give her deposition as scheduled. Likewise, Dr. Dean McNeel's deposition would have to be rescheduled.

14. KaVo listed only two witnesses, other than accountant Dennis Arnie, that it intends to call at trial, Mr. Klaus Kistler and Mr. Amod Kher. KaVo offered to make these two men available for depositions in October, but plaintiff's counsel's schedule was not open.

15. On October 15, 2010, alternative deposition dates were submitted to plaintiff's counsel but, KaVo was unable to produce the witnesses during November.

16. Plaintiff's counsel advised that the only date he was available in December was December 14, 2010. Undersigned counsel agreed to prepare a stipulation that no one was objecting to the late taking of these depositions.

17. In order to accommodate plaintiff and make the depositions more convenient, KaVo agreed to produce both of its witnesses in one place, Charlotte, North Carolina; although one of the witnesses lives in Chicago.

18. After this date was agreed upon, plaintiff's counsel then said that he could depose these two witnesses prior to the November 19 discovery deadline. But as noted, KaVo's counsel and witnesses had conflicts which precluded the depositions in that time period.

19. There have been no attempts to stonewall anybody.

20. KaVo instead has agreed to produce two witnesses at one time, at its own expense, on a date which plaintiff's counsel said was the only date he was available in December.

21. Further, and by agreement, plaintiff is scheduled to depose KaVo's forensic accountant, Dennis Arnie, on Monday, November 15, 2010 in Houston.

22. In conclusion, there was never any problem about any of these deposition schedules until Friday, October 29, 2010.

23. Defendant KaVo has been generous and cordial in its deference to Mrs. McNeel and there is no basis to allege any type of connivance or stonewalling.

## III. REQUEST FOR PRODUCTION

### A. **Background**

24. The defendant, KaVo Dental Technologies, LLC is an Illinois limited liability company. It is ultimately a wholly owned subsidiary of Danaher Corporation. The named defendant sold "the Everest System" to Dr. McNeel's clinic.

25. The Everest System was manufactured in Germany by KaVo Dental GmbH. It is a separate legal entity organized under the laws of Germany and is also ultimately owned by Danaher Corporation.

26. In short, KaVo GmbH is a separate and foreign corporation which is not a defendant in this case and is not represented by counsel.

27. No discovery propounded by the plaintiff has ever asked the defendant to produce documents in Germany in the possession of KaVo Dental GmbH, the German corporation. The present defendant does agree, and will provide, copies of any non-privileged e-mails or other correspondence between it and KaVo Dental GmbH because those communications are certainly within the present defendant's "control."

28. At paragraph 3 of plaintiff's motion is referenced a September 21, 2010 letter from plaintiff's counsel to undersigned counsel introducing the discovery dispute. (Exhibit C to plaintiff's motion, Doc. #38). That letter does not seek or even mention anywhere a "German company."

29. Again, this was not the subject of a discovery request or dispute until the October 28, 2010 telephone conference.

30. The parameter of the power of Rule 34 of the Federal Rules of Civil Procedure has been litigated within its language of "possession, custody, or control." Under Federal Rule of Civil Procedure 34, a party is only required to produce documents which are in its "possession, custody, or control."

31. The party seeking disclosure bares the burden of proving that the documents are within the control of the other party. See Glaxo, Inc. v. Boehringer Ingelheim Corp., 1996 W.L. 710836 (D. Conn.). See also U.S. Union of Petroleum and Industrial Workers, 870 F.2d 1450, 1452 (9th Cir. 1989). "Proof of theoretical control is insufficient; a showing of actual control is required." See In re: Citric Acid Litigation, 19 F.3d 1090 (9th Cir. 1999).

32. Plaintiff does not assert that KaVo Dental Technologies is in possession or custody of the documents he is seeking. The only question is whether KaVo Dental Technologies "controls" documents held by KaVo Dental GmbH.

"Control" has been defined as the "legal right to obtain the documents on demand." See In re: Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995). In Searock v. Stripling, 736 F.2d 650 (11th Cir. 1984) the Court held that the mere ability to request and obtain documents from a third party did not equate to a legal right to obtain the documents upon demand. Thus, such proof was not sufficient to demonstrate "control" "in the sense required for production under Rule 34." See id., 736 F.2d at 654.

33. Likewise, in Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420 (11th Cir. 1993) the Court held:

> The plaintiffs could no doubt have asked NET to give it the chromatograms; judging from what happened later, NET would have complied; and maybe if it had balked, the plaintiffs could have brought the chromatograms from it. But the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite. (Emphasis Added).

See id., 11 F.3d at 1426-27.

34. In determining whether the litigating corporation has the legal right to obtain the documents sought, the focus must be upon the relationship between it and the corporation holding the documents. See Gerling, *supra.* In Gerling, the court specifically discussed discovery of documents being held by a sister corporation. There, the Court held:

> The requisite control has been found only where the sister corporation was found to be the alter ego of the litigating entity, e.g., Perini American, Inc. v. paper Converting Machine Co., 559

> F.Supp. 552, 553 (E.D.Wis.1983) . . . or where the litigating corporation had acted with its sister in effecting the transaction giving rise to suit and is litigating on its behalf, e.g. Alimenta (U.S.A.), Inc. v. Anheuser-Busch Companies, 99 F.R.D. 309, 313 (N.D.Ga 1983) (the sisters had "acted 'as one' in the transaction at issue" and the sister possessing the documents had assisted its sibling in litigating the case). See also Soletamche and Rodio, Inc. v. Brown and Lambrecht Earth Mowers, Inc., 99 F.R.D. 269 (N.D.III.1983).

Since there was no proof that the two corporations in Gerling were under the same control, that their corporate entities had been disregarded or that they were both involved in the transactions being litigated, the Third Circuit found that the trial court erred in sanctioning the defendant for failing to produce the documentation.

35. Likewise, in Pennwalt Corp. v. Plough, Inc., 85 F.R.D. 257 (D..C. Del., 1979) the Court found that production of documents held by an affiliated corporation could not be compelled. There, the affiliated corporation had separate directors and there was no evidence that their business operations were so intertwined as to render their separate corporate identities meaningless. Thus, the Court concluded:

> Since Schering is a separate legal entity from Plough, possibly having a different legal and commercial interest at stake, its right should not be determined in absentia. Fed.R.Civ.P. 45 provides a much more appropriate method of obtaining these documents for Schering's views on the matter to be considered. Therefore, the information relating to TINACTIN sales and promotional costs need not be produced pursuant to Pennawalt's document request.

36. Kavo Dental Technologies, LLC and Kavo Dental GmbH have different corporate officers, different managers, different directors, and/or different immediate parent companies.

37. Glaxo, Inc. v. Boehringer Ingelheim Corp., 1996 W.L. 710836 (D. Conn.) is also instructive. There, the Court noted that the plaintiff simply asserted that the litigating party could obtain the documentation from its Spanish sister corporation without any proof establish-

ing that it had the actual ability to do so. The Court held that control over documents held by an affiliated corporation "has been found generally only on alter ego grounds". The Court then rejected the plaintiff's request for discovery finding that a plaintiff cannot simply assume that the litigating corporation has control over its foreign sister corporation's documents.

38. Further, the plaintiff's Requests never mentioned a German company.

39. If this defendant were a General Motors dealership being sued over a defective vehicle, would the dealership and its counsel be expected to attempt access to the files of the non-party, General Motors, a potential defendant?

40. Plaintiff also contends at page 4 of its motion that it wants the internal communications of the current defendant and "the entity merged into it." Plaintiff refers to page 3 to the Articles of Merger between the defendant and KaVo Dental Corporation.

41. These documents will be produced as set forth in paragraph 47 of this response.

42. Defendant now turns to the actual Requests for Production to which plaintiff's motion refers.

**B. <u>Request for Production Number 2</u>**

43. Plaintiff made no complaint about this response in his September 21, 2010 letter and, the actual wording of the request is for "correspondence and e-mails by and between the plaintiff and <u>defendant and its successors and/or assigns</u>." The German company is not a "successor or assign." However, defendant has agreed per its response, and will provide the plaintiff copies of any correspondence between itself and the plaintiff up to and including March 2, 2009 when Lori McNeel notified the National Accounts Manager for the Financing Corpora-

tion that KaVo had misrepresented facts about the Everest System and that the McNeels had "conversations with legal counsel regarding KaVo's anti-trust behaviors."

44. After that date, any internal communications are privileged.

45. Thus, Request for Production No. 2 did not seek anything from Germany.

**C. Request for Production Number 3**

46. Plaintiff alleges at page 5 that plaintiff "learned on October 28, 2010 that defendant is refusing to produce any internal documents from Germany." That was the same date that the defendant learned that the plaintiff was demanding internal documents from Germany. Request No. 3 again refers only to the named defendant and its successors and assigns.

47. Speaking for the named defendant, it will produce any such documents that are not privileged and/or after the notification of potential litigation.

**D. Request for Production Number 5**

48. Again, this does not relate to any German company. Defendant still stands on its objection as being overbroad.

49. Defendant has provided to the plaintiff a specific list of every item of repair made to Dr. McNeel's Everest System. There are three of those part numbers. Defendant is willing to determine the extent of warranty claims regarding these part numbers.

50. Additionally, plaintiff, at page 5 of its brief, quotes from an e-mail describing a problem with "GeoMagic SW," which counsel believes to be a computer portion of the machine. If a part number can be determined for that problem, again a warranty search will be made.

51. These efforts should disclose whether there was any type of repetitive repair/warranty issue.

52. The problem for the defendant is that the plaintiff claims again and again that the system will not work. The defendant says that it worked every time it was repaired and it was repaired every it did not work.

53. The discovery problem is created because the plaintiff cannot identify a specific product defect/failure of a continuing nature.

54. To require the defendant to search every warranty claim of every purchaser continues to be overbroad, ill defined, and burdensome.

### E. <u>Conclusion on Request for Production</u>

55. Plaintiff never named the German company as a source to which its discovery was directed. Defendant has properly responded in all respects.

## IV. THE INTERROGATORIES

56. The three interrogatories to which plaintiff complains concerned allegations in defendant's answer to the general effect that any product sold by it complied with the terms of any agreement, and denied the existence of any manufacturing defects and that defendant failed to satisfactorily service or respond to any complaint, denying any breach of any duty to the plaintiff.

57. These are simply general pleading allegations stating that the defendant's product was a good product and that it was prepared satisfactorily. The only two witnesses that are going to testify are Messers. Amod Kher and Klaus Kistler as per defendant's response.

58. Their general role will be to explain the Everest System, demonstrate how it works, answer any accusations put to them by plaintiff, and generally describe what was done to service Dr. McNeel's product.

59. They will be available to answer any questions at their deposition, and again the defendant has not scheduled their depositions to stonewall or delay the plaintiff's access to any information.

## V. CONCLUSION

If the McNeels want a continuance it is not fair to this defendant for that desire to be attributed to a discovery dispute. There has been no connivance by the defendant in the agreed upon dates for its two witnesses to be deposed, and the deposition of its forensic accountant has been scheduled by agreement.

The Requests for Production were never addressed to a non-party German company.

There is no need for a continuance of the trial date nor any need to amend the scheduling order except for the allowance, by agreement, of the KaVo witness depositions in December and the conclusion of the McNeel depositions.

WHEREFORE, defendant, KaVo Dental Technologies, LLC, prays that plaintiff's motion to compel; motion to amend scheduling order, or in the alternative, motion for continuance be denied in all respects; and for all other relief to which it is entitled.

Respectfully submitted,

J. V. Phelps (Bar No. 74122)
Jeffrey W. Puryear (Bar No. 93109)
Serena Thompson Green (Bar No. 2005258)
WOMACK, LANDIS, PHELPS & McNEILL, P.A.
P.O. Box 3077
Jonesboro, AR 72403
Tel. (870) 932–0900
jphelps@wlpmlaw.com
jpuryear@wlpmlaw.com
sgreen@wlpmlaw.com

By /s/ J. V. Phelps

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Kenneth R. Shemin
Shemin Law Firm, LLC
333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
E-mail: Ken@sheminlaw.com

/s/ J. V. Phelps
J. V. Phelps