**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**DR. DEAN McNEEL, D.D.S., P.A.**
**Substituted For**
**Dean McNeel d/b/a**
**OZARK PROSTHODONTICS** **PLAINTIFF**

**v.** **No. 5:10-cv-05043-JLH**

**KaVo DENTAL TECHNOLOGIES, LLC** **DEFENDANT**

**<u>REPLY TO PLAINTIFF'S BRIEF RESPONDING TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

## I. DAMAGE CLAIMS TO BE DISMISSED

Paragraphs 18 and 19 of defendant's Statement of Undisputed Materials Facts (Doc. #17) listed damage claims of plaintiff as to which defendant sought summary judgment.

Dean McNeel's Affidavit (Doc. #41) and plaintiff's Responsive Brief to the Motion for Summary Judgment (Doc. #37) admit and concede that the Motion should be granted on the following elements:

(1) Paragraph 18 referenced plaintiff's claim of loss of income to the laboratory in the amount of $3,335.45 per month. The responsive brief states that plaintiff is "no longer pursuing" that claim. (Doc. #37, at 10)

(2) Paragraph 19(a) referenced a claim of $988,236.00 for the personal time of Dr. McNeel. Dean McNeel's Affidavit makes no claim for this amount, and plaintiff's brief never argues for this damage.

(3) Paragraph 19(c) referenced a claim of $14,841.00. That amount has been reduced to $1,479.00. (Doc. #37, at 10)

(4) Paragraph 19(d) referenced e-mail communications in the amount of $174,600.00. That claim has been reduced to $17,400.00. (Doc. #37, at 10)

(5) Paragraph 19(e) referenced a claim for supplies, repairs and parts in the amount of $54,966.72. That claim has been withdrawn. (Doc. #37, at 10)

(6) Paragraph 19(f) referenced a $25,000.00 claim to replace supplies; plaintiff does not deny that should be dismissed.

(7) Paragraph 19(g) referenced a claim for $20,000 in attorneys fees. That claim has also been withdrawn. (Doc. #37, at 10)

(8) Paragraph 19(h) referenced a $235,000.00 claim and that has been reduced to $198,634.92. (Doc. #37, at 8)

Therefore, plaintiff's prior claims of over $2.1 million have been reduced by a total of $1,258,764.70, exclusive of the purchase price/replacement cost issues discussed below.

## II. REMAINING CLAIMS

The remaining dispute concerns the following damage claims asserted in the McNeel Affidavit. (Doc. #41)

### (A) <u>Purchase/Replacement</u>

McNeel's Affidavit, at paragraph 26, wants a return of the original purchase price of $195,241.95. (Doc. #41, at 6) As mentioned in defendant's summary judgment brief, plaintiff cannot sue for the purchase price of a machine and retain the machine at the same time especially when the product has generated revenue. There is no such right under the U.C.C.

At paragraph 29, McNeel seeks an alternative measure of damages for a replacement system alleged to cost $198,634.92. (Doc. #41, at 7) This could only be evidence of damage, as opposed to an actual damage.

Plaintiff thus agrees and acknowledges it cannot recover both the purchase price and the replacement cost.

And, whichever of the two figures plaintiff elects to submit must be reduced by the $115,300.00 in gross revenue which plaintiff admits receiving by use of the Everest System through August 20, 2010. (Doc. #18-2)

Further, Dr. McNeel's Affidavit acknowledges at paragraph 27 that another $26,000.00 should be deducted because the machine which the Everest replaced generated that income upon its resale. (Doc. #41, at 6)

Accordingly, from either the replacement cost, or the purchase price, defendant is entitled to a deduction in the amount of $141,300.00 to avoid a double recovery. This would leave a maximum claim of either $53,941.95 or $57,334.92, depending on plaintiff's damage proof.

**(B) New Claim for Costs**

Next, at paragraph 31 of Dr. McNeel's Affidavit is a claim for $189,441.35 alleged to be "costs relating to outsourcing production to other labs to perform work that should have been performed in-house." (Doc. #41, at 7)

This damage category has never been provided to defendant and is untimely under Federal Rule of Civil Procedure 26(a)(1)(E) holding:

> A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case. . . .

Dr. and Mrs. McNeel are the responsible sources of information relating to the damage claims of the corporate plaintiff, to which Dr. McNeel is the sole shareholder. It is not the fault of Mr. Shemin that for months the McNeels supplied him with information which could not legally form the basis of submissible claims; nor, is it his responsibility that the dental clinic waited until October 29, 2010 to produce this new damage claim based upon information which was always a part of its business records.

An instructive case cites Eighth Circuit precedent. In US Salt, Inc. v. Broken Arrow, Inc., 2008 WL 2277602 (D. Minn., May 30, 2008), the court stated:

> Moreover, the record shows that all of the evidence U.S. Salt seeks to introduce was in its possession from the very early stages of the litigation and it offers no excuse for its failure to disclose other than its strategic decision to seek only loss profits as damages.

Id. at *5.

The decision cited from the Eighth Circuit was ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc., 53 F.3d 186 (8th Cir. 1995). It held that a new damage theory could not be advanced:

> Shortly before the close of discovery, but well after the trial court's deadline for submitting expert witness affidavits, ELCA had an apparent change of heart. At that time, ELCA sought permission to have an expert testify regarding the fair market value and potential diminution in the value of the Industrial Drive property.

Id. at 189-90.

**(C) New Claim for Re-Work**

Plaintiff's last new damage claim is in the amount of $312,340.00 and is set forth at paragraph 32 of Dr. McNeel's Affidavit. (Doc. #41, at 7-8) Again, this is a damage category never previously supplied to defendant.

These computations are based upon internal records to Dr. McNeel that have been available to plaintiff since before the litigation was commenced.

**(D) <u>Late Submissions</u>**

Defendant does not know the extent to which plaintiff's new "consultant" authored or conceived these two (2) new claims. However, that consultant was not contacted until after defendant timely presented the expert analysis of Mr. Dennis Arnie, Arnie & Company. (Doc. #18-4)

The simple truth is that defendant deposed both Dr. and Mrs. McNeel bearing upon damage models which were never called "preliminary." Defendant hired an accomplished and qualified expert to review those models and attend depositions. Defendant's expert prepared and delivered to plaintiff a lengthy report analyzing the invalidity of the presented claims; and then plaintiff decided to involve a consultant and present two new items of damage totaling $501,781.35.

This is not the orderly process of litigation that Federal Rule of Civil Procedure 26 contemplated.

**<u>CONCLUSION</u>**

KaVo acknowledges that there are many factual disputes concerning liability issues.

But, since the proper plaintiff is now a party, the Motion for Summary Judgment deals solely with elements of damage.

Giving KaVo credit for the gross revenues received from the Everest through August 20, 2010, plus the income from the sale of the product the Everest replaced totals $141,300.00. The Uniform Commercial Code does not allow a recovery of a purchase price plus a recovery of the

cost of replacement. If the Court should allow either of those elements of damage, with the $141,300.00 deduction, the only element of damages remaining is in the amount of either $53,941.95 or $57,334.92.

Plaintiff also claims $17,400.00 for e-mail communication time plus $1,479.00 for telephone conversation time.

At the time defendant filed its Summary Judgment Motion, plaintiff was asserting damages of $2.1 million. According to plaintiff's pleadings and Dr. McNeel's affidavit, that figure has now been reduced to a maximum claim of $862,537.22. That amount includes a double recovery for the purchase price and the cost of a replacement, which is not allowed in Arkansas.

Plaintiff's claimed amount also fails to deduct the gross revenue generated from use of the Everest System.

It does raise for the first time new, and legally late, claims of $501,781.35, which should not be allowed.

Therefore, at most, plaintiff's claim can only be $53,941.95, or $57,334.92, plus $17,400.00, plus $1,479.00.

These totals are either: $76,213.92, or $72,820.95.

Respectfully submitted,

J. V. Phelps (Bar No. 74122)
Jeffrey W. Puryear (Bar No. 93109)
Serena Thompson Green (Bar No. 2005258)
WOMACK, LANDIS, PHELPS & McNEILL, P.A.
P.O. Box 3077
Jonesboro, AR 72403
Tel. (870) 932–0900
jphelps@wlpmlaw.com
jpuryear@wlpmlaw.com
sgreen@wlpmlaw.com

By /s/ J. V. Phelps
Attorneys for Defendant,
KaVo Dental Technologies, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Kenneth R. Shemin
Shemin Law Firm, LLC
333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
E-mail: Ken@sheminlaw.com

/s/ J. V. Phelps
J. V. Phelps