**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**DR. DEAN McNEEL d/b/a**
**OZARK PROSTHODONTICS** **PLAINTIFF**

**v.** **No. 5:10-cv-05043-JLH**

**KaVo DENTAL TECHNOLOGIES, LLC** **DEFENDANT**

**MEMORANDUM BRIEF IN SUPPORT OF SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

## I. INTRODUCTION

Defendant, KaVo Dental Technologies, LLC (hereinafter "KaVo") recently filed its motion for summary judgment on both liability and damages issues. (Doc. # 18). KaVo's motion is still pending with the Court.

When plaintiff responded to KaVo's summary judgment motion, Dr. Dean McNeel filed an affidavit which, *inter alia*, alleged for the first time that plaintiff was seeking $189,441.35, as damages for "outsourcing expenses." (Doc. # 41, ¶ 31).

KaVo is supplementing its pending motion for summary judgment for a limited purpose: plaintiff's claim for outsourcing expenses should be dismissed because this new claim is supported by an affidavit that is inconsistent with the deposition testimony of Dr. McNeel and his wife, Lori McNeel.

## II. ANALYSIS

### A. Plaintiff has asserted a new claim for the recovery of outsourcing expenses.

In discovery, plaintiff produced a spreadsheet that listed the damages it was claiming. (Doc. # 18-1). KaVo filed its motion for summary judgment and challenged each aspect of the damages that plaintiff was claiming in the spreadsheet. (Doc. # 20).

When plaintiff responded to the damages portion of KaVo's summary judgment motion, plaintiff tendered the affidavit of Dr. Dean McNeel, which claimed for the first time that plaintiff was attempting to recover damages associated with outsourcing expenses. (Doc. # 41, ¶ 31). Specifically, the affidavit of Dr. McNeel said that plaintiff incurred costs of $189,441.35 because it outsourced production to third party labs to perform work that should have been performed on the KaVo Everest System. Following this new claim, KaVo argued in its reply brief that the claim was untimely and requested dismissal. (Doc. # 42, at 3-4). KaVo understands that the Court will rule on that objection when it decides the pending summary judgment motion.

But, there is another reason for this Court to dismiss plaintiff's new claim for outsourcing expenses. Dr. and Mrs. McNeel testified in their depositions, which preceded Kavo's motion for summary judgment and Dr. McNeel's affidavit, that plaintiff incurred no such expenses.

The pertinent colloquy in the deposition of Dr. McNeel needs:

(EXAM BY MR. PHELPS:)

Q Okay. Now, how much money have you, and by that I mean the plaintiff in this lawsuit, spent out-of-pocket because of the EVEREST system not performing the way you had hoped?

A Do you mean out of my personal income or out of business expense? I believe that all of those show through expenses.
. . .

Q (BY MR. PHELPS) The plaintiff in this lawsuit is you doing business as, so it's you individually are the plaintiff, you're the person that's filed this lawsuit.
A Are you asking me - - are we talking about - - my business and myself are the same thing. In that case, I did take personal expenses out.
Q Yeah, that's what I'm talking about.
A Okay.
A When I say you, I'm just - - what I want to try and find out is from whatever source the money was spent, how much money has been spent by you, the business, the clinic, the lab on this machine because it somehow did not perform. Actual, you know, money out. Checks written, cash exchanged, that sort of thing.
A Yes.
Q If you understand me?
A Yes.
Q Okay. How much? I think you're saying this $46,000 may be part of it, but I'm not sure.
A Which $46,000 are you referring to?
Q The one that's under your damage computation there on line two, 46,195.38. You've got equipment repairs.
A That represents supplies - - that number in particular represents supplies that we purchased, zirconia, acrylics, to mill. It's milling product, that's what that number represents.
Q So that's stuff you would've had to purchase even if the machine had worked properly?
A I would - - that's - - yes.
Q Okay. So how much money have you had - - have you, the lab or your practice had to spend because the EVEREST did not perform satisfactorily? . . .
A We did do this. This is a document I'm sure you've alread entered as an article that is what we call the current working document due to the failure of those product - - those catalog numbers. We have estimated expenses that we - - or current - - it's a working document. That's labor cost, that's our estimate.
Q You're talking about Exhibit - -
A That document right there.
Q Exhibit 1?
A Those are failure - - represents failures of the system to work. Those are our efforts to calculate real cost tied to

those failures. It's a lot of numbers, but that's what we're using and it's a working document.
Q What does that mean, a working document?
A That means as we continue to have other failures, as we continue to understand it better, how much are we spending in labor, how much does the cost of remaking, seeing patients for multiple revisits, how much does that really cost Ozark Prosthodontics or Dean McNeel? And so those are our calculations of how much it's really costing when something doesn't work.
Q So who can I debate each one of these with, your wife or you?
A Both of us. I may not know every answer.

(Exhibit A, at 170 - 174).

Q Why do you keep using the KaVo product?
A Because I don't have - - I feel like I don't have a choice.
Q. Well, couldn't you use an outside lab like many dentists do?
A And then I would still have the extra cost of the monthly payment so that wouldn't make much sense. That means, let's say it's $3,200, I believe it's roughly that. You know, that's almost $40,000 a year I'm automatically taking right off the top. I would still have that expense even if I sent my lab - - my work elsewhere.
Q But $30,000 a year in extra expense is a lot cheaper than charging my client $50,000 just because you couldn't start your machine once.
A It was their choice.
Q Whose choice?
A It was their choice not to resolve this a long time ago whenever I started asking them within months of the purchase.
Q I'm just talking about the expense. Why - - why would you - - you tell me you lost $50,000 because the machine wouldn't start one day and you want my client to pay that back to you. Well, you could have gone out and started working with a lab according to you for $3,200 a month times 12 and that would just be a one-time deal instead of 50,000 here and 17,000 there and 49,000 there, wouldn't that make more sense economically, mathematically?
Mr. SHEMIN: Object as to form.
Q (BY MR. PHELPS) Wouldn't that make more sense mathematically?
MR. SHEMIN: Same objection.
A I don't run this the same way as you're proposing.

(Exhibit A, at 217 - 18) (emphasis added).

Mrs. McNeel provided similar testimony in her deposition, when she said:

> Now, granted, the KaVo thing has not been helpful. I mean, I can look at these numbers, I'm not a mathematician, but you're right, we'd be better off to put a rock around it and put it in the Arkansas River and go outsourcing everything. But then the quality is going go [sic] down because it's just not the quality of work.

(Exhibit B, at 37) (emphasis added).

The testimony of Dr. and Mrs. McNeel clearly states that plaintiff had not outsourced any work because of the Everest System; and the idea of taking such action is apparently absurd to Dr. and Mrs. McNeel. When their testimony is compared with Dr. McNeel's subsequent affidavit, which was filed after KaVo moved for summary judgment, it is abundantly clear that the affidavit is in direct contradiction. Indeed, the notion that plaintiff incurred nearly $190,000 in outsourcing expenses as a result of the Everest System as stated by Dr. McNeel in the affidavit, (Doc. # 41, at ¶ 31), forcefully illuminates the inconsistency of their deposition testimony.

**B. Dr. McNeel's affidavit should be stricken from the record.**

The law in the Eighth Circuit is clear: a party resisting summary judgment cannot tender an affidavit that is inconsistent with deposition testimony in an effort to create a genuine issue of material fact and effectuate a denial of the motion. Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1364 - 65 (8th Cir. 1983). In Camfield, the plaintiff alleged that Michelin wrongfully terminated their dealership contract. In deposition, Mr. Camfield said they delivered a check to Michelin that was post dated. When Michelin presented the check for payment, it was

rejected by the Bank. In the affidavit, Mr. Camfield testified that he requested that Michelin physically return the church to his place of business on the post date. His affidavit was clearly contrary to his deposition.

The Eighth Circuit affirmed the summary judgment in favor of Michelin, even in the face of the contradictory testimony. Recognizing that narrow circumstances, such as confusion on the part of the deponent or the need for a deponent to explain deposition testimony, might permit a conflicting affidavit to be considered, there were no circumstances which justified the changed testimony of Mr. Camfield reflected in the affidavit. Instead, the affidavit was filed in order to defeat Michelin's summary judgment, which the Court recognized as a "sham issue" and disallowed the practice. Justifying its decision, the Court said:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issue of fact.

Id. at 1365 (citations omitted). In a situation where the party resisting summary judgment files an affidavit inconsistent with deposition testimony, it is appropriate for the District Court to strike the affidavit and grant summary judgment. City of St. Joseph v. Southwestern Bell, 439 F.3d 468, 475-76 (8th Cir. 2006) (finding that affidavit filed on the same day as the plaintiff's opposition to summary judgment motion was "highly suspicious" and properly stricken).

The testimony of Dr. and Mrs. McNeel made it plain that plaintiff had not - indeed, would not - outsource work in the wake of the difficulties they claim to have faced with the Everest System. In stark contrast, however, Dr. McNeel's affidavit says that plaintiff incurred significant expenses associated with outsourcing the work. Both facts cannot be true. Based on the principals espoused in Camfield, Dr. McNeel's affidavit is submitted for the purpose of

defeating KaVo's motion for summary judgment. Therefore, KaVo moves this Court to strike the affidavit of Dr. McNeel and give it no consideration when ruling on KaVo's motions for summary judgment.

**C. There is no proof that plaintiff incurred expenses for outsourcing work.**

The depositions of Dr. and Mrs. McNeel clearly demonstrate that plaintiff did not incur expenses for outsourcing work as a result of their claimed difficulties with the Everest System. (Exhibit A and B). (Indeed, the only proof of the outsourcing expenses is found in the affidavit of Dr. McNeel, which should be stricken by the Court.) Accordingly, there is no proof to support any claim for damages in connection with outsourcing expenses. And, absent supporting proof, this claim must fail.

KaVo respectfully moves this Court for the entry of partial summary judgment on any claim that plaintiff attempts to advance for the recovery of damages related to outsourcing expenses.

## III. CONCLUSION

KaVo filed an appropriate motion for summary judgment to challenge all of plaintiff's damages. Plaintiff made no claim for outsourcing expenses because there was no such claim, as evident from the depositions of Dr. and Mrs. McNeel.

Plaintiff thereafter submitted an affidavit from Dr. McNeel, which directly contradicted the deposition testimony and submitted claims for outsourcing expenses.

Under established precedent in the Eighth Circuit, this Court should strike the affidavit of Dr. McNeel and give it no consideration whatsoever.

KaVo is entitled to the entry of judgment as a matter of law, under Rule 56(c), because there is no proof to support any claim of plaintiff for the recovery of damages associated with outsourcing expenses. KaVo so moves this Court.

Respectfully submitted,

J. V. Phelps (Bar No. 74122)
Jeffrey W. Puryear (Bar No. 93109)
Serena Thompson Green (Bar No. 2005258)
WOMACK, LANDIS, PHELPS & McNEILL, P.A.
P.O. Box 3077
Jonesboro, AR 72403
Tel. (870) 932–0900
jphelps@wlpmlaw.com
jpuryear@wlpmlaw.com
sgreen@wlpmlaw.com

By /s/ Jeffrey W. Puryear

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Kenneth R. Shemin
Shemin Law Firm, LLC
333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
E-mail: Ken@sheminlaw.com

/s/ Jeffrey W. Puryear
Jeffrey W. Puryear